**DEAUVILLE ASSOCIATES, Inc., v. MAGRAW et al.**

No. 13661.

United States Court of Appeals
Fifth Circuit.

May 20, 1952.

See also 181 F.2d 5; 197 F.2d 91.

Samuel J. Kanner, Stuart W. Patton, Miami, Fla., for appellant.

R. H. Ferrell, Roger Edward Davis, Frederick J. Ward, Miami, Fla., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal by Deauville Associates from an order[1] striking its petition as intervening *lis pendens* purchaser for reimbursement of advances made by defendants Winkel and Lasser and Deauville Associates, and for subrogation. It is the latest and *Deo volente* the last in the long series of appeals to this court growing out of the ill fated and much litigated dealings of Lasser and Winkel with Lucy Eristavi-Tchitcherine, owner of substantially all the stock of *Deauville Corporation*, and, with one Kowal, whose creation and creature *Deauville Associates* is.

Begun with the execution by the corporation of a contract for the sale to *Lasser et al.*, of its properties and followed by the later "abandonment of the sale of said property and the merger" of all of the agreements for its sale and all transactions connected with them into the stock deal, these dealings have been most prolific of litigation.

---

1. This order had three provisions. They are in substance:

(1) That the motion of said receivers to strike paragraphs 1, 2, 3, 4, 5, 6, 7, 8, and 9 of the said petition of Deauville Associates, Inc. is granted and said paragraphs are hereby stricken from said petition.

(2) Decreeing the fee of $1500 heretofore awarded to Roger Edward Davis to be a lien prior in dignity to the tax liens of the United States against the funds now on deposit in the registry of this court to the credit of the estate of J. A. Lasser, Deceased.

(3) Declaring the tax liens of the United States, resulting from the April 23, 1947, assessments a first lien on the funds in the registry to the credit of Winkel and after the payment of the lien of Davis a first lien on its income tax claims against Lasser.

To what extent the death of appellant Tchitcherine[2] and the subsequent receivership of the property has been responsible for this condition must be left to conjecture. The fact remains, however, that ever since the reversal by this court of the summary judgment of the court below ordering specific performance of the contract, Cause No. 1148 M Civil has been the storm center, the battleground of a struggle for the property of Deauville Corporation, with charges and recriminations against litigants and lawyers alike the order of the day.

Throughout this period, what has given force and direction to all the winds that blew has been a three pronged controversy. Waged by Lasser and Winkel, at first with Princess Tchitcherine and, after her death, with the receivers on the one hand, and with Kowal and his corporation, Deauville Associates, claiming as their assignee on the other, it has finally come down to the controversy over the efforts of Deauville Associates to intervene as of right and acquire the property of the Deauville Corporation. This triple controversy has generated proceeding after proceeding, appeal after appeal, almost without end.

In our opinion this day filed in the companion appeal to this one, 5 Cir., 197 F.2d 91, we have dealt in passing with the litigation in this court growing out of the efforts of the appellant, *Deauville Associates* to intervene in these proceedings, not as a *lis pendens* purchaser, but as of right.

Affirming the order dismissing the last of them, we approved the action of the court in providing in the decree entered January 23, 1951, "that the right of *Deauville Associates, Inc.* to file its claim, if any, in this court for any refund which it claims it is entitled to receive in this case is hereby preserved."

Pursuant to the permission so given, intervenor on that same day filed in the cause its petition for reimbursement and for subrogation, and the court, on motion of the receiver to strike each of the paragraphs of the petition, and, on the petitions of Roger Edward Davis and the United States, for a determination of priorities, entered its order striking each of the nine numbered paragraphs of intervenor's claim, and fixing priorities.

Appealing from, and superseding, that order, intervenor is here assigning two grounds of error: (1) the striking of all its claims; (2) the allowance to Davis of $1500 as attorneys fees.

Upon the first ground, appellant insists that the order striking its claims was repugnant to the opinion and final decree of Dec. 10, 1948, which, cancelling their contract, required that Lasser and Winkel, through whom intervenor claims, be placed in *statu quo* by repayment to them of all monies properly expended by them.

Pointing to the undisputed evidence showing advancements for the benefit of Deauville Corporation, made both by Lasser and Winkel and by Kowal, whose solely owned corporation and alter ego it is, intervenor, citing Fowler v. Lee, 106 Fla. 712, 143 So. 613; Federal Land Bank v. Godwin, 107 Fla. 537, 145 So. 883, and Stowers v. Wheat, 5 Cir., 78 F.2d 25, insists that the denial of the subrogation it seeks does violence to equitable principles of the first order.

Pointing also to the admission of record that Deauville Associates should be reimbursed to the extent of $27,650, with interest, paid on the mortgage by Kowal, made

---

2. Eristavi Tchitcherine v. Lasser, 5 Cir., 164 F.2d 144.

3. The tender reads as follows:
   "Now comes your receivers, John M. Murrell and D. H. Redfearn, and respectfully show unto the Court:
   "1. That there has been a mortgage on the MacFadden-Deauville Hotel property during this entire litigation for the principal amount of $250,000.00; that it had been reduced from time to time by payments on the principal and interest so that at the time of the sale of the property by the receivers under order of this Court the balance of the principal and interest due was $182,926.93.
   "2. That during the period of time that this property has been involved in this litigation and prior to the appointment of your receivers on Jan. 15, 1948,

by the receivers in their tender of payment,[3] appellant insists that certainly as to those sums the court should have decreed subrogation. Insisting that in arriving at the sums to be fixed in the judgment of Dec. 10, 1948, as the amounts due Lasser and Winkel, no account was taken of their subrogation claims for moneys paid by them on the mortgage, appellant points to the colloquy [4] in the record on that score and urges that, in law, claims of subrogation were not, and could not have been, included in that judgment.

Upon a careful consideration, on the record as a whole, of the order striking the nine paragraphs of intervenor's claim without affording it a hearing as to the equities thereof, we are of the clear opinion, for the reasons hereafter briefly stated, that the district judge plainly erred as to Paragraphs IV and V; that paragraphs VI and VII were properly stricken; and that the order, while affirmed as to the striking of these two paragraphs must be reversed as to the other paragraphs, and remanded for further and not inconsistent proceedings.

Our reasons for thinking so are, that in the general state of confusion and controversy arising out of the contracts between the parties, there is no basis for treating as a stranger or volunteer any of those making advances, and that what any one of them did for the preservation of the *res* by discharging liens against, or otherwise preserving it, must be taken account of, and those making advances must be protected to the extent that the advances really enured to the benefit of the property. The principles permitting subrogation and those preventing unjust enrichment unite in requir-

---

the following amounts were paid on said mortgage by I. Kowal or one of his companies, Courtland & Company:

| Date due | Date paid | Amount | Paid By |
|---|---|---|---|
| 11–15–46 | 4–18–46 | $ 6,250.00 | Courtland & Company |
| 2–15–47 | 2–15–47 | 6,250.00 | I. Kowal |
| 5–15–47 | 5–12–47 | 2,650.00 | I. Kowal |
| 8–15–47 | 8–14–47 | 6,250.00 | I. Kowal |
| 11–15–47 | 11–17–47 | 6,250.00 | Courtland & Company |
| | Total ............ | $27,650.00 | |

"3. That the sums so paid by said I. Kowal and Courtland & Company were sums that were paid by them as volunteers but that the Deauville Corporation received the benefits of said payments and in equity and in good conscience your receivers believe that the said I. Kowal and Courtland & Company should be reimbursed in the amounts so paid by them as above set forth, as the payment of said amounts preserved the property involved in this litigation.

"Wherefore, petitioners pray that this Court enter an order allowing them to pay to the said I. Kowal and Courtland & Company, the amounts above set forth as amounts having been paid out by them to preserve the property which was in the custody of this Court; that as said mortgage bore interest at the rate of 4½% they be allowed to pay interest to the said Kowal and Courtland & Company at the same rate on the amounts so advanced."

4. Mr. Ferrell:
"The decree of Dec. 10th forecloses any further amounts being determined in regard to Lasser and Winkel. This is res judicata of all matters that were presented to the Court or which might have been presented to the Court."
Mr. Ward:
"Now, Mr. Ferrell, in all sincerity, you have said that so many times, and the final decree provides in the last paragraph, which you have cited on many occasions, that Lasser and Winkel could always come into this Court and show His Honor they had made additional payments to keep the mortgage in good standing, and they as a creditor would be entitled to a refund of those moneys. You stated that all along, and you represented to the Court that that could be done at a later date by a proper petition."
Mr. Ferrell:
"If Your Honor please, I don't think the record reveals any such concession or admission."
Mr. Ward:
"It is a fact, nevertheless, that could be shown."

ing this. In Stowers v. Wheat, 5 Cir., 78 F.2d 30, this court, stating, "Subrogation is perhaps the purest of equities", gave careful consideration to, and carefully set down, the rules governing its application, and as carefully applied them to the facts of the case. Those principles are still of force. They apply in all their vigor to this case unabated and undiminished by the claim erroneously made below that, though unadjudicated in fact because not put in issue, these claims to subrogation must be considered as having been adjudicated in law because they might have been. With the situation as it existed at the time of the entry of the judgment, with Lasser and Winkel having no real interest because of having sold it to Kowal or to Deauville Associates, or at least in a controversy over whether they had, and with the record showing that the amount was arrived at by some kind of around the table agreement of counsel, to which Deauville was not and could not have been a party, this is not a case for the application of the strict rule of *res adjudicata* as applied in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. Certainly that rule could not be applied to the sums advanced on the mortgage by Kowal and the surbrogation claims of Deauville based thereon. For Lasser and Winkel, not having advanced, could not claim them, and Deauville's efforts to intervene had then been denied.

In holding, as we do, that the claims of Deauville to subrogation to payments on the mortgage made by Lasser and Winkel are not barred by *res adjudicata,* we do so on the record we have an entirely without prejudice to the right of any proper party on a further hearing as to them to show otherwise if so advised. Also in holding that on the record the payment of such sums raised an equity in Deauville's favor,

we do so subject to a further proper showing that it does not.

Further, since appellant, in its brief, abandoned its appeal from that part of the decree appealed from which awards priority to the United States on its tax claim, we express no opinion on the point. We, however, call to the attention of court and counsel, in connection with the proceedings to be held on the rehearing of Deauville's claims and the assertion of the United States, if it does assert, that it has a prior lien thereon, to the fact that, whatever may be determined to be the law and fact of the matter taxwise, as to moneys due Deauville in right of payments made on the mortgage by Lasser and Winkel, the claims of Deauville to subrogation as to the sums paid by Kowal is not a claim, through Lasser and Winkel, and stands taxwise on an entirely different footing.

Coming finally to the second claim, that there was error in awarding Davis attorneys fees without affording Deauville Associates an opportunity to be heard, we are of the opinion that this ground is not well taken, since there was a clear understanding reached by Deauville's counsel and the court [5] that the hearing could proceed in his absence with the question of priorities to be deferred until he could be heard. Further, while Deauville did appeal from provisions 2 and 3 of the decree of April 2nd, awarding priority first to Davis and next to the United States, in its brief it abandoned those portions of its appeal, and no prejudice, from the mere allowance of the fee to Davis, is shown.

The order appealed from is affirmed in all respects except as to paragraph 1 of it, striking paragraphs 1, 2, 3, 4, 5, 8 and 9 of the petition. As to this portion of the order, the judgment is reversed and the cause

---

5. Mr. Kanner:
   "On that basis would Your Honor permit me to be excused, then?"
   The Court:
   "Yes, sir. We are going on with this hearing."
   Mr. Kanner:
   "With the understanding there will be no disbursement on this, and it will be withheld until the question of priorities can be determined?"
   The Court:
   "Yes, I think that is right. Mr. Duhaime, if you establish your claim you will draw the order on this, and will bear that in mind, that no disbursement is to take place until Mr. Kanner has an opportunity to be heard."

is remanded for further and not inconsistent proceedings.

Affirmed in part, reversed in part, with costs of appeal assessed against the appellees.